IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLLY WALKER, individually, and CAROL )
PARADISE, individually and on behalf of all )
others similarly situated, and on behalf of the )
general public, )
)
)
Plaintiffs, )
) Civil Action No.: 06 C 6906
v. )
) Suzanne B. Conlon, Judge
BANKERS LIFE & CASUALTY COMPANY, )
an insurance company domiciled in the State of )
Illinois; and DOES 1 to 100, )
)
Defendants. )

## **MEMORANDUM OPINION AND ORDER**

In this diversity case, Carol Paradise ("Paradise") brings a putative class action against Bankers Life & Casualty Company ("Bankers Life").[1] Paradise alleges Bankers Life misclassified its California insurance agents ("agents") as independent contractors rather than employees, and denied them rights and benefits required under California law. Paradise alleges Bankers Life violated California Labor Code § 2802, California Civil Code §§ 3336 and 3294, California Unemployment Insurance Code Sections §§ 1112(a), 1112.5 and 1113, and California Business and Professions Code §§ 17200, et seq. Paradise moves for class certification. For the reasons set forth below, her motion is granted.

### BACKGROUND

Paradise is a Los Angeles resident who was an insurance agent for Bankers Life from

---

[1] Holly Walker, the other named plaintiff, brings this action on her own behalf only.

approximately September 2002 to July 2004. Pl. Second Am. Cmplt. ¶ 1 ("Cmplt."). The proposed class she seeks to represent is composed of all current and former Bankers Life insurance agents in California from September 18, 2002 to present, the purported class period. Bankers Life is an Illinois insurance company where it is, and at all relevant times, was authorized by the California Department of Insurance to transact business in the lines of disability and life insurance in California. *Id.* ¶ 2.

Bankers Life insurance agents comprise a sizable part of its sale force, marketing its products primarily to senior citizens. *Id.* ¶ 11, Pl. Mem. at 2. The relationship between Bankers Life and its insurance agents are governed by a form agent contract, which includes the following conditions:

- [The contract] shall not create an employer-employee relationship. The relationship of Agent to [Bankers Life] shall be that of independent contractor. Compl. Ex. A at 1.

- While [the contract] is in effect, the Agent has the authority to:

    - solicit applications for insurance policies to be issued by [Bankers Life] and payments made thereon, and issue receipts for the monies collected,
    - deliver policies issued by [Bankers Life] on applications received, if the first premium has been paid,
    - give service to policy holders to maintain the policies in force, and
    - solicit applications for reinstatement of lapsed policies.

    *Id.* at 2.

- As compensation in full for the performance of services of the Agent as authorized in [the contract], [Bankers Life] will pay commissions as set forth in [commission schedules attached]. *Id.*

- Either party may terminate [the contract] at will, without cause, by giving notice to the other party of the intention to terminate. *Id.* at 4.

- During the term of [the contract] and for 24 months thereafter, within the territory regularly serviced by the branch sales office of [Bankers Life] where the Agent normally submits business, the Agent shall not . . . induce or attempt to induce . . . any agent, branch sales manager, divisional vice president or employee of [Bankers Life] to contract with or sell insurance business with any company not affiliated with [Bankers Life]. *Id.* at 5.

Despite the fact that agents are classified as independent contractors, Paradise alleges Bankers Life retains and exercises a high degree of control over insurance agents in marketing and selling Bankers Life products. Compl. ¶ 12. This control is purportedly exhibited in policies and procedures that all insurance agents are systemically required to follow in California. *Id.* ¶ 12, 18. As a result, Paradise avers that all insurance agents who were/are retained by Bankers Life during the class period are misclassified as independent contractors rather than employees, thereby preventing them from attaining the same benefits provided to other Bankers Life employees and otherwise required by law. *Id.* ¶ 13. These benefits purportedly include: unemployment insurance withholdings, disability insurance withholdings, social security contributions, workers compensation premiums, medical insurance premiums, 401(k) contributions, license fees, errors and omissions insurance premiums, and necessary expenses and losses. *Id.* Additionally, Paradise contends that Bankers Life unlawfully misclassified insurance agents in order to secure an unfair business advantage over competitors who comply with California employment laws. *Id.* ¶ 14. Paradise moves to certify a proposed class of insurance agents pursuant to Fed. R. Civ. P. 23.

## DISCUSSION

### I. Legal Standards

The court has broad discretion whether to grant class certification. *Keele v. Wexler*, 149 F.3d

589, 592 (7th Cir. 1998). Certification is appropriate if Paradise demonstrates the proposed class satisfies all four requirements of Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one condition of Rule 23(b). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The court must not consider the case's merits. *Allen v. Chicago Transit Auth.*, No. 99 C 7614, 2000 WL 1207408, at *5 (N.D. Ill. July 31, 2000) (Conlon, J.) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). However, the court may "prob[e] behind the pleadings" to determine if the proposed class members' interests are fairly encompassed within Paradise's claims. *Id.* (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). The court does not "talismanically accept" plaintiffs' factual allegations as true when determining certification. *Hyderi v. Washington Mut. Bank*, 235 F.R.D. 390, 395 (N.D. Ill. 2006) (Filip, J.). A class action should be certified only if the court is satisfied "after a rigorous analysis" that Rule 23 is met. *Id.* (quoting *Falcon*, 457 U.S. at 161).

## II. Analysis

Paradise proposes the following class:

> All persons who entered into an Agent Contract with Defendant and were appointed to work as an Agent of Defendant in California and who were classified by Defendant as independent contractors, from September 18, 2002 to the conclusion of this action.

Pl. Mot. at 2. She contends the class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(1)-(3). Bankers Life argues that Paradise cannot satisfy any of the Rule 23 requirements.

### A. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a) requires the class be so numerous that joinder of its members is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability does not mean impossibility; Paradise need only prove it would be inconvenient and difficult to join the proposed class members. *Bethards v. Bard Access Sys., Inc.*, No. 94 C 1522, 1995 WL 75356, at *3 (N.D. Ill. Feb. 22, 1995) (Guzman, J.). Paradise may establish impracticability based on good faith estimates, *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *2 (N.D. Ill. Apr. 25, 2007), and the court may also rely on "common sense assumptions" and reasonable inferences to determine if the numerosity requirement is met. *Rahman v. Chertoff*, --- F.R.D. ----, 2007 WL 2198781, at *24 (N.D. Ill., July 26, 2007) (Guzman, J.) (citations omitted). Although Rule 23(a)(1) contains no threshold requirement, generally 40 or more members are adequate to establish numerosity. *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 396 (N.D. Ill. 2006) (Filip, J.). Additionally, in determining impracticability, the court considers: "(1) the class size; (2) the geographic dispersion of class members; (3) the type of relief sought by the class; and (4) the practicability of relitigating a common core issue." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 431 (N.D. Ill. 2003) (Alesia, J.).

Paradise argues that numerosity is easily met. Bankers Life declarant Meg Newman indicated from corporate records that there were approximately 1300 authorized insurance agents in California during the proposed class period. Drexler Decl. Ex. B at 69-70. Additionally, Paradise claims Bankers Life records indicate that in excess of 1900 people served as agents from the onset of the class period. Drexler Decl. ¶ 8. Bankers Life argues that of these 1900 + agents, Paradise has not indicated how many of them have legitimate claims against Bankers Life, why joinder would be impracticable given that the class members are ascertainable and live

in a defined region, how each individual's claim would be too small for them from to pursue their claims individually.

Bankers Life does not contest that 1300 to 1900 Bankers Life agents were authorized during the class period. The agents each signed contracts expressly disclaiming their status as employees of the company and containing a clause stipulating that agents are to abide by all policies, practices, and procedures adopted by Bankers Life. Compl. Ex. A at 1-2. According to Paradise, it is the uniform treatment of these agents consistent with the clauses in the agent contract that makes them ascertainable members of the same class. Paradise and other class members base their claim on the classification, rights, and authority given them under the same form contract that governs Bankers Life's purported control over them. The fact that 1300 to 1900 agents each signed the same form contract during the class period is enough to show that the number of proposed class members is ascertainable for purposes of the numerosity requirement.

There are several additional factors that weigh in favor of numerosity. First, the class size is so numerous to make joinder infeasible. Second, the proposed class members are geographically dispersed throughout California, not in a small geographical region. Third, since in addition to monetary relief, the purported class seeks declarative and injunctive relief, the remedy would protect the rights of future class members for whom joinder is necessarily impracticable. *See Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill.1983). These considerations support a finding of numerosity.

### 2. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The

Seventh Circuit has held that "'[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2).'" *Keele*, 149 F.3d at 594 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common set of operative facts is usually present when defendants are claimed to have engaged in "standardized conduct toward the members of the proposed class." *Id.*; *see Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993) (Aspen, J.). "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986) (Hart, J.) (citing *Midwest Cmty. Council, Inc. v. Chicago Park Dist.*, 87 F.R.D. 457 (N.D. Ill. 1980)). Thus, class certification cannot be defeated merely because there are some factual variations among the members' grievances. *See Allen*, 828 F. Supp. at 551.

Paradise argues that commonality is satisfied. Bankers Life treated its agents the same in numerous respects, including classifying each of them as independent contractors without exception; and offering them the same pay, training programs, and work requirements. Paradise points to the common legal question of whether agents were misclassified under California law. Bankers Life argues that common facts are not present, as there is evidence that agents are not under the control of Bankers Life. Here, the common overarching legal issue is whether Bankers Life misclassified agents as independent contractors. Common factual issues concern whether the appointed agents were subject to identical form contracts disclaiming an employee relationship and whether agents were subject to the same standardized form of control. Although there are certainly factual differences among the members' grievances, Paradise has demonstrated sufficient grounds to satisfy commonality. *See, e.g., Rosario v. Livaditis*, 963 F.2d at 1017

### 3. Typicality

Under Rule 23(a)(3), the court must determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Courts have cautioned, however, that "[t]ypical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citing *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)). In deciding whether Paradise has met the typicality requirement, the court must focus on Bankers Life's conduct and determine whether Paradise and members of the putative class claim similar injuries. *See Rosario v. Livaditis*, 963 F.2d at 1018.

Paradise argues her claims are typical of those of the putative class because she held the same position as others in the proposed class and was subject to the same control mechanisms allegedly employed by Bankers Life. Bankers Life counters that Paradise fails to meet the typicality requirement of Rule 23(a)(3) because she did not experience the same degree of control purportedly experienced by others in the class, insofar as she: (1) held at least fifty appointments with other insurers while appointed at Bankers Life, (2) did not attend required meetings or training sessions, and (3) hired her own telemarketers. In Paradise's reply, she states that these assertions misstate the facts. She attests she did not work for 50 other companies while under contract with Bankers Life, but rather she received two appointments and one renewal appointment while working for Bankers Life, and sold four non-competing policies to former

8

clients in two years with Bankers Life, only after seeking consent. Paradise Reply Decl. ¶ 5. Further, Paradise asserts she attended required meetings regularly; her telemarketers were under Bankers Life control; and she hired her own daughter to send out Christmas cards to clients.

Regardless of these nuanced distinctions, typicality under Rule 23 is satisfied because of the essential similarities between her claim and those of the proposed class members. Paradise's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d at 1018. Even though some factual variations may be present, they are not sufficient to defeat typicality. The typicality requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Retired Chi. Police Ass'n*, 7 F.3d at 597 (quoting *De La Fuente*, 713 F.2d at 232). Paradise's misclassification claim has the same essential characteristics as those of her proposed class members. Her claims are premised on the notion that she was misclassified under the same form contract as other proposed class members. Other common factual issues include: whether Paradise was under Bankers Life's control under the form contract; whether Paradise had authority to perform her duties independently under the contract; and to what extent Bankers Life policies were enforceable under the form contract. Given these similar characteristics, and keeping in mind that the purported class members' claims are based on the same legal theory, typicality is satisfied. *See Oshana*, 472 F.3d at 506.

#### 4. Fairness and Adequacy

Rule 23(a) requires Paradise to fairly and adequately represent the proposed class' interests. Fed. R. Civ. P. 23(a)(4); *Retired Chicago Police Ass'n*, 7 F.3d at 598. The adequacy

9

determination has two elements: (1) Paradise's attorney must be qualified, experienced, and able to conduct the litigation; and (2) Paradise's interests must not be antagonistic to the class members' interests. *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1982). Paradise contends she meets both requirements because she retained experienced class counsel and she asserts claims identical to the class.

Bankers Life does not dispute the adequacy of class counsel. The court finds no reason to question the ability of Paradise's counsel to conduct this litigation. Rule 23(a)(4)'s competency requirement is met. *Hyderi*, 235 F.R.D. at 396.

Bankers Life disputes whether Paradise can adequately represent the class for three reasons. First, Bankers Life argues that Paradise does not possess the same interest as the class members, nor did she suffer the same injury. Second, Bankers Life argues Paradise does not have standing to pursue any form of injunctive relief because she is a former agent and thus cannot show a real or immediate threat of any alleged harm. Third, Bankers Life argues that Paradise has no knowledge of the policies or practices followed in branches other than her own. Paradise contends she had experiences common to all other agents, and that she therefore possesses the same interest as class members.

The precise level of control over Paradise in her capacity as an agent may differentiate her from other class members (especially those based out of other offices), but that does not render her unable or unlikely to fully represent class interests. *See, e.g., Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *6 (N.D. Ill. Mar. 19, 2007) (Conlon, J.) (citations omitted) (finding adequacy even though factual differences existed between named plaintiffs and class members). The entire class, including Paradise, assert the same legal theory based on a

similar nucleus of facts: they were purportedly misclassified in the agent contracts and were subject to a standardized form of control exhibited through Bankers Life's uniform policies. Regardless whether the particulars of Paradise's situation as an agent differ from those of class members, this does not preclude her from adequately representing the interests of the class. There is no indication Paradise is antagonistic to the class or will face defenses inapplicable to other class members. *Id.* (citations omitted).

The argument that Paradise has no personal knowledge of what policies or practices were followed in other branches is also unavailing. An adequate class representative must maintain only an "'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'" *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (Castillo, J.) (citation omitted). The burden of showing this basic understanding is "not difficult." *Murray v. New Cingular Wireless Svc., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005). (Castillo, J.). Paradise's claims reveal her general understanding that she signed a non-negotiable agent contract under which she was subject to similar policies governing all other California agents. Therefore, whether Paradise had direct knowledge of other branches does not bear on the question whether her interests would conflict with other class members.

Bankers Life's additional argument that Paradise lacks standing (and adequacy) to pursue any form of injunctive relief because she is a former agent is also unpersuasive. Former employees are adequate representatives of current employees in class actions seeking, at least in part, declaratory and/or injunctive relief. *See, e.g., Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 489-90 & n. 6 (N.D. Cal. 1978) ("[T]here is ample support for the position that former

employees may represent present employees."); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *6 (N.D. Ill. Dec. 1, 2000) (Lefkow, J.) (named plaintiff adequate because he possessed same interest and suffered same injury as proposed class members, whether former or current). Former employees may provide superior representation in claims against the employer on behalf of current employees. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.1975); *see also Maddock v. KB Homes, Inc.*, No. CV-06-05241 CAS, 2007 WL 2221030, at *5 (C.D. Cal. July 9, 2007). Paradise's interest in pursuing injunctive relief is not antagonistic to those who are currently agents. Current agents may be reluctant or dissuaded from acting as named plaintiffs in an action against their employer. Paradise has shown that her claims are not antagonistic to the claims of class members. She has also shown her commitment to representing the proposed class, as she took part in a deposition in Chicago.

### B. Rule 23(b) requirements

After fulfilling the requirements of Rule 23(a), Paradise must also meet one of the subsections of Rule 23(b). She contends certification is proper under Rule 23(b)(1)-(3). Because this action is maintainable under subsection (b)(3), it is unnecessary to consider (b)(1) and (b)(2).

### 1. Rule 23(b)(3)

Rule 23(b)(3) requires: (1) that "questions of law or fact common to members of the class predominate over any questions affecting only individual members;" and (2) the "class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3); *Hyderi*, 235 F.R.D. at 398. The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. *See* Fed. R. Civ. P. 23(b)(3) advisory committee notes.

12

When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id.*

"In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues." *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, *4 (N.D. Ill. Apr. 18, 2002) (Conlon, J.) (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir.1981)). The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive elements of the claims so as to envision the form a trial on the issues would take. *Zapka v. Coca-Cola Co.*, No. 99 CV 8238, 2000 WL 1644539 at *4 (N.D. Ill. Oct. 27, 2000) (Darrah, J.). Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper. *Rodriguez*, 2002 WL 655679 at *5. Predominance concerns whether the named plaintiffs can offer proof on a class-wide basis through their individualized claims. *Id.* This requirement is distinct from Rule 23(a)(2)'s commonality element and "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Superiority is established when a class action would achieve "economies of time, effort, and expense," and promote uniformity of decisions without sacrificing procedural fairness. *Id.* at 615.

### A) Predominance

The common questions concern whether Bankers Life misclassified its agents as independent contractors instead of employees.[2] Under California law, the "principal test of an

---

[2] This court previously held that California law applies to the class members' claims. *Walker v. Bankers Life and Cas. Co.*, No. 06 C 6906, 2007 WL 967888, at *5 (N.D. Ill. Mar. 28, 2007).

13

employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal. 3d 341, 350 (Cal. 1989) (quoting *Tieburg v. Unemployment Insurance Appeals Board*, 2 Cal. 3d 943, 946 (Cal. 1970)) (internal quotation marks omitted). Courts recognize "several 'indicia' of the nature of a service relationship" including whether an employer has "the right to discharge at will, without cause." *Id.* at 350-51. Other secondary factors, derived principally from the Restatement Second of Agency, include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* "Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *Id.* (citation and quotation omitted).

Paradise contends that in view of these factors, common questions of fact and law predominate over individual ones, including common facts regarding identical agent contracts, common training work materials, common scripts, fact finder forms, and application packets. In addition to this documentary evidence, Paradise contends agent declarations also indicate that Bankers Life policies were applied uniformly to agents. Bankers Life denies this characterization, and responds that liability will turn on an individualized examination of each

14

class member's relationship with the company. Bankers Life proffers a number of summaries and declarations indicating the varied experiences from agent to agent, including the extent to which various Bankers Life policies were imposed on them. The declarations and summaries suggest that the extent of Bankers Life's control depended on different management styles of individual bank managers and each individual agent's interpretation of that management style within the same branches. Regardless of these differences, many common questions arise from Bankers Life's own efforts to standardize its relationship with agents, much in the same manner as seen in the instructive case *Chun-Hoon v. McKee Foods Corp.*, No. C-05-620, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006) (Walker, J.). *See also Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. 2006) (Henderson, J.).

In *Chun-Hoon*, the district court was asked to reconsider its certification of a class of distributors who contended they were misclassified as independent contractors rather than employees. 2006 WL 3093764 at *2. After analyzing the relevant factors in *S.G. Borello*, the district court reiterated that certification was proper because common questions arose from defendant's efforts to standardize its relationships with the plaintiff distributors. *Id.* at 3. Evidence of the defendant's efforts to standardize the relationship included the same underlying distribution agreement with each plaintiff, the promotion of uniformity through instruction booklets, common policies, and detailed instructions to employees to standardize distributor orientations. *Id.* This evidence was sufficient for the court to determine that common questions predominated individual issues. Indeed, the court certified the class in spite of evidence that defendant's practices could merely be construed as "suggestions" and some distributers were not subject to defendant's supervision. *Id.* The court held that this evidence was unavailing, as

"occasional instances of noncompliance [did] not override defendant's purpose for distributing the booklets: to standardize its arrangement with plaintiffs." *Id.* at 4.

This case resembles *Chun-Hoon*. Paradise offers numerous common issues that predominate over individual issues. First, the issue of classification is at the center of the dispute. Second, agents have each been appointed as independent contractors pursuant to the same non-negotiable contract. Drexler Decl. Ex. I at 39:2-40:11; Ex. H at 16:16-22. This form contract delineates some of the contours of the relationship between Bankers Life and its agents. For example, there is a provision that specifies the extent of the authority given to agents to be consistent with Bankers Life's manual, rate books, rules and regulations. Compl. Ex. 1 at 11. Another provision states that the contract can be terminated at will by either party. *Id.* at 4-5. A non-competition clause is also included, and agents are required to return all materials to Bankers Life immediately upon their termination. *Id.* at 5-11. Each agent is subject to the same commission schedule. *Id.* at 2.

Additionally, it is undisputed that regardless of how individual branches operate, Bankers Life provides free uniform training and educational materials for all agents. Drexler Decl. Ex. D. A welcome letter to new agents by Scott Perry, the executive vice president of Bankers Life, expressly notifies agents that "The [New Agent Success] training program is required for all new agents" and "[i]n 4 to 6 months you will be involved with the 2nd required training program in the New Agent Training Track – Winners Edge, which builds on the NAS training." Crawford Decl. Ex. D (Ex. 1). Additionally, a "Field Compliance Alert" issued by Bankers Life's senior vice president of sales, instructed all agents that they were required to complete another training program entitled "Compliance as a Competitive Edge." Crawford Decl. Ex. F (Ex. 4).

Moreover, materials pertinent to the Compliance as a Competitive Edge training expressly stated that the Bankers Life agent contract is exclusive, and that agents are expected to give their "full-time application of time, energy, and attention." Day Decl. Ex. C. These training features manifest the common standardized expectation Bankers Life communicates to its agents. Further, all agents in California are instructed to use the company-monitored Gryphon telephone system in calling customers, *see* Crawford Decl. Ex. M (Ex. 6); use Bankers Life standard forms, *see* Drexler Decl. Ex. I at 45:5-16; and are given approved scripts to use in the sale of Bankers Life products. Drexler Decl. Ex. J 140:9-142:6; 143:24-144:18.

Bankers Life attempts to undercut the common elements of this evidence by arguing that liability will depend on an individualized examination of every California agent. It maintains that its training materials are not required, but rather constitute best practices to ensure agents' success. Def. Mem. at 9. However, the documents themselves indicate that uniform training was at the very least aspirational and intended to be attended by all agents. Bankers Life also argues that training is uniform to conform to state regulations – but this characterization also demonstrates that common issues exist with respect to Bankers Life's compliance standards. Although Bankers Life's evidence may reveal disparate experiences with respect to job details, common issues pertaining to Bankers Life's standardization of the agent position through the form contract, the training materials, and policies predominate in ascertaining employment classification, as in *Chun-Hoon*. Even though individual issues exist, they do not bar class certification. *See Chun-Hoon*, 2006 WL 3093764 at *2-3; *see also Tierno*, 2006 U.S. Dist. LEXIS 71794 at *27-33; *see generally Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334. (Cal. 2004) (because each class member might be "required ultimately to justify an

17

individual claim does not necessarily preclude maintenance of a class action," and "individual issues do not render class certification inappropriate so long as such issues may effectively be managed."). Without weighing the competing evidence, Paradise has proffered sufficient evidence to meet the requirements of predominance.

## B) Superiority

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to such a finding include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. *Id.*

There is no indication that individual agents seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason.

Paradise argues that if the class is not certified, individual agents will either have to join this case or file individual claims with the California Department of Labor Standards Enforcement and risk inconsistent judgments, and that due to the common issues in this case, management of the case does not pose a problem for the court. Bankers Life argues superiority is lacking because of the number of separate issues that must be resolved even after liability is established, and that individual circumstances of each agent will require a series of multiple, fragmented lawsuits tried separately. Additionally, Bankers Life contends there are alternative

fora available to each individual class member to try their claims.

Bankers Life's argument merely repeats its argument regarding predominance – that individual issues would result in mini-trials. But as discussed above, common issues predominate given the factors integral to Paradise's claim under California law. Bankers Life's additional argument that there is an alternate forum available is also deficient. Bankers Life indicates that review of a California Department of Labor Standards Enforcement decision is *de novo* by the Superior Court. An administrative action may therefore lead to both adminstrative and judicial proceedings to adjudicate an individual dispute. *See, e.g., Tierno*, 2006 U.S. Dist. LEXIS 71794 at *34, *see e.g. Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005). Multiple proceedings involving common issues could therefore result in an enormous duplication of effort and would likely hinder judicial economy and efficiency in adjudicating the core issues. Due to this reason and the reasons cited above, superiority is satisfied.

## CONCLUSION

Paradise has met her burden of proving a class action is appropriate under Fed. R. Civ. P. 23. Accordingly, her motion for class certification is granted. The following class is certified:

> All persons who entered into an Agent Contract with Defendant and were appointed to work as an Agent of Defendant in California and who were classified by Defendant as independent contractors, from September 18, 2002 to the conclusion of this action.

ENTER:

Suzanne B. Conlon
United States District Judge

October 1, 2007